IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>NICHOLAS LIPOVSKY,<br><br>　　　　　　Defendant. | 4:15CR3013<br><br>**FINDINGS AND RECOMMENDATION** |

The defendant filed a motion to suppress, and he requests a Franks hearing. (Filing No. 24). Lipovsky seeks to suppress all evidence seized in this case, claiming Investigator Glenn Kemp, an investigator for the Adams County Sheriff's Office, presented false information and concealed material information when he applied for a warrant to search Defendant's residence. The application was submitted on August 26, 2014, to a County Court Judge of Adams County, Nebraska. Based on the application, a warrant was issued and Defendant's residence was searched. Marijuana, cocaine, heroin, and psilocin were found in the home, along with drug paraphernalia and items used to grow marijuana. (Filing No. 22-2, at CM/ECF pp. 29-30, 48).

Defendant claims all evidence found during the search of his home must be suppressed under the Fourth Amendment. In support of his motion, Defendant submitted Kemp's warrant application along with evidence obtained from the government during discovery. The government's response deadline was May 1, 2015. The motion is deemed fully submitted as of May 2, 2015.

For the reasons discussed below, the defendant's motion to suppress and for a Franks hearing should be denied.

## STANDARD OF REVIEW

The defendant claims the warrant to search his residence was invalid because Investigator Kemp's warrant application misrepresented the facts, concealed material facts, and misled the court. A warrant affidavit is considered presumptively valid. Franks, 438 U.S. at 171. As such, when a defendant challenges a warrant application, a hearing is not required unless the defendant makes a threshold showing that the affiant deliberately misled the judge, and had the judge known the truth, the application would have been denied for lack of probable cause.

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Franks, 438 U.S. at 171. Even assuming the defendant shows information within the application was false, or that material information was omitted, a defendant is not entitled to a hearing unless he first shows that the warrant application, corrected to remove allegedly false information and to include allegedly concealed material facts, would not have supported a finding of probable cause. Franks, 438 U.S. at 170; United States v. Frazier, 280 F.3d 835, 845 (8th Cir. 2002).

## ANALYSIS

In addition to Kemp's warrant application, the defendant has filed copies of store receipts, product descriptions, the warrant return, pictures of items found in the home, police and lab reports, a weather report, and online instructions for home repairs. (Filing No. 22-2). Defendant claims this additional information, when compared to Kemp's

affidavit, provides the threshold showing for a Franks hearing. Specifically, the defendant claims Kemp's affidavit omitted the following material information:

- Between April 15, 2013 and August 1, 2014, Defendant visited Big G-Ace Hardware Store a total of 16 times;

- Lipovsky did not purchase any precursors for manufacturing methamphetamines; and

- when viewed in the context of the time-span and other products purchased, all of which was not explained to the judge, Lipovsky's purchases were wholly consistent with innocent behavior.

(Filing No. 22, at CM/ECF pp. 2-6).

The defendant also claims the following information within Kemp's affidavit was false and misleading:

- Lipovsky purchased a one-gallon insulated, Victory brand, jug from the hardware store, not a "red gallon-sized gas can;"

- he purchased a roll of Terry towels, not "cheese cloth;"

- the "high intensity florescent light" described in the affidavit was merely a florescent light fixture located over the kitchen sink; and

- upon defendant opening the door of his home to the officers, they "immediately smelled a strong odor of raw marijuana coming from inside the residence."

(Filing No. 22, at CM/ECF pp. 6-7).

Defendant's challenges the information presented regarding two distinct stages of Kemp's criminal investigation. Specifically; what prompted Kemp to pursue contacts with this defendant, and what did the officers notice or see when that contact was made?

3

On August 1, 2014, a hardware store told the police that the defendant had purchased items depicted on a Meth Lab Watch poster. The poster was distributed to businesses months earlier by law enforcement. When Kemp arrived at the store to investigate, an employee produced receipts indicating the defendant had purchased items used for manufacturing methamphetamine. The receipts, dating back to April 15, 2013 and through August 1, 2014, revealed that over that time, the defendant purchased multi-purpose five-gallon pails, draw-string disposal bags, paper towels, aluminum foil, latex disposal gloves, coffee filters, propane fuel, chemical resistant gloves, duct tape, rubbing alcohol, a canning funnel, Mason jars, vinyl tubing, Vermiculite and fertilizer for African Violets. Corrected as argued by the defendant, the defendant also purchased Terry towels and an insulated jug (not cheese cloth and a red gallon-sized gas can); had never purchased methamphetamine precursors from the hardware store; and as to all items purchased between April 15, 2013 and August 1, 2014, Defendant purchased only consumer amounts of such items during his 16 documented visits to that store.

The tip from the hardware store served to identify possible illegal drug activity worthy of further investigation. And the corrections and additions suggested by the defendant are not material to the judicial review of Kemp's affidavit. Even had the affidavit stated that the defendant did not purchase methamphetamine precursors (or that the officers had located no evidence of such purchases), that the defendant purchased a one-gallon jug and not a gas can, that he purchased Terry towels and not cheese cloth, and that his hardware store purchases were infrequent and of consumer-only quantities, Kemp had reason to wonder if the defendant was engaged in illegal activity.

Perhaps more importantly, with or without <u>any</u> information from the hardware store, the law enforcement officers did not violate the Fourth Amendment by knocking on the defendant's door to speak with the defendant. "[A]n unconstitutional search occurs

4

when officers gain visual access to a . . . room after an occupant opens the door not voluntarily, but in response to a demand under color of authority." United States v. Conner, 127 F.3d 663 (8th Cir. 1997). However, the Fourth Amendment is not implicated when the occupant of a home voluntarily responds to a knock at the door during normal waking hours. United States v. Deanda, 73 F.3d 825, 826 (8th Cir. 1996).

After reviewing the receipts at the hardware store, officers attempted to perform a "knock and talk" at the defendant's residence. On August 1, 2014 and on August 4, 2014, no one responded to their knock at the residence. When officers approached the residence on August 26, 2014, they heard loud music. After knocking several times and ringing the doorbell, the defendant opened the door.

Kemp's affidavit states that while he waited on the porch, he "observed through the window coverings a high intensity florescent light shining," consistent with lighting used to grow marijuana, and when the door was opened, he smelled raw marijuana. Defendant argues that these statements are false.

The defendant has submitted no evidence explaining the wattage and intensity of the florescent light actually observed by the officer. And from the evidence presented, the officer's view would have been limited to what he could see through a crack in the mini-blinds. (Filing No. 22-2, at CM/ECF p. 32). The officer had not yet entered the home when the affidavit was presented to the judge. Perhaps Kemp was incorrect, and the florescent light was not being used to grow marijuana. But, at most, the record supports a finding that the officer was mistaken. The record does not support Defendant's claim that Kemp intentionally or recklessly misrepresented that the illuminated florescent light appeared, from the officer's perspective, to be a marijuana grow light.

5

The defendant claims Kemp's statement that he smelled raw marijuana in the home was "deliberately false" and "was made knowingly and intentionally and/or with reckless disregard for the truth." In support of this argument, Defendant asserts that's the raw marijuana within his home was located in glass mason jars, (Filing No. 22-2, at CM/ECF pp. 42, 47), and therefore the officer could not have smelled it. There are two primary problems with this argument. First, not all the raw marijuana found in Defendant's home was stored within glass mason jars. See, e.g., Filing No. 22-2, at CM/ECF pp. 43, 45. Second, and more importantly, odors can linger long after the source is removed. And particularly in a carpeted home, (Filing No. 22-2, at CM/ECF p. 37), where marijuana was likely grown, (see Filing No. 22-2, at CM/ECF pp. 29-30 (inventory includes marijuana seeds and a "boxed grow light & boxed bulb")), and raw marijuana was still present, (Filing No. 22-2, at CM/ECF pp. 30-31, 42, 43, 45, 47), it is not, as defendant argues, "impossible" or "improbable" that Kemp "smelled a strong odor of raw marijuana coming from the residence" when the defendant opened the front door. (Filing No. 22, at CM/ECF p. 7).

Finally, the odor of raw marijuana emanating from the home provided sufficient probable cause to obtain a warrant to search Defendant's home. Even if the court disregards all the information (correct or incorrect) gathered from the hardware store, and Kemp's statement that a grow light was present and illuminated within the home, the application still supports a finding of probable cause to search Defendant's residence.

> [T]he odor of an illegal drug can be highly probative in establishing probable cause for a search. Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948); accord United States v. Caves, 890 F.2d 87, 91 (8th Cir.1989). Circuits have held that the odor of marijuana, standing alone, is sufficient to support probable cause. United States v. Tobin, 923 F.2d 1506, 1512 n. 4 (11th Cir.1991); United States v. Nielsen, 9 F.3d 1487, 1490-91 (10th Cir.1993); United States v. Elkins, 300 F.3d 638, 659 (6th Cir.2002); United States v. Moore, 329 F.3d 399, 405 (5th Cir.2003).

United States v. Gerard, 362 F.3d 484, 489 (8th Cir. 2004).

As such, Defendant has failed to present evidence sufficient to justify a <u>Franks</u> hearing.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant t[o 28 U.S.C. § 636](b), that the motion to suppress filed by the defendant, ([Filing No. 22]()), be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on July 20, 2015, or as soon thereafter as the case may be called, for a duration of two (2) trial days. This case is subject to the prior trial of criminal cases and such other civil cases as may be scheduled for trial before this one. Jury selection will be held at the commencement of trial.

May 27, 2015.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.